

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Coke R. Stevenson
Governor of the State of Texas
Austin, Texas

Dear Governor Stevenson:  Opinion No. O-4331
Re: Whether Palo Pinto
County may alone or
jointly with the
City of Mineral Wells
acquire land situated
in Parker County for
the use of the Mineral
Wells airport.

In your letter of January 15, 1942, you advise
that the Civil Aeronautics Administration has allocated
the sum of $373,000.00 to the proposed Mineral Wells
airport, which is expected to form an important link in
the national airport system.  The unfavorable topography
in the vicinity of Mineral Wells and other reasons have
made it necessary for the Civil Aeronautics Administra-
tion to select a site which lies partly in Parker County.
The city may be financially unable to sponsor the pro-
ject unless it is assisted by Palo Pinto County.

You request our opinion as to whether, under
the existing law, Palo Pinto County, either alone or
jointly with the City of Mineral Wells, can acquire the
portion of the airport site which lies in Parker County.

County Commissioners' Courts have no power or
authority, except such as is conferred upon them by the
Constitution or statutes of this State, either expressly
or by necessary implication.  Bland v. Orr, 39 S. W.
558, Sup. Ct.; Baldwin v. Travis County, 85 S. W. 480;
Commissioners' Court v. Wallace, 15 S. W. (2) 535, Sup.
Ct.; Landrum v. State, 97 S. W. (2) 264, Error Ref.;
El Paso County v. Elam, 106 S. W. (2) 393; Howard v. Hen-
derson County, 116 S. W. (2) 479, error refused.

Senate Bill No. 393, Ch. 142, General and Special Laws, 47th Leg., provides in part:

"'Section 1.  A -- That the governing body of any incorporated city in this State may receive through gift or dedication, and is hereby empowered to acquire, by purchase without condemnation or by purchase through condemnation proceedings, and thereafter maintain and operate as an airport, or lease, or sell, to the Federal Government, tracts of land either within or without the corporate limits of such city and within the county in which such city is situated, and the Commissioners' Court of any county may likewise acquire, maintain and operate for like purpose tracts of land within the limits of the county.

"'B -- That the governing body of any incorporated city in this State may receive through gift or dedication, and is hereby empowered to acquire by purchase without condemnation, and thereafter maintain and operate as an airport, or lease, or sell to the Federal Government, tracts of land without the county in which such city is situated, provided said tracts are not within five (5) miles of another incorporated city that has a population of more than fifteen hundred (1500) people, according to the last preceding Federal Census.'"

The Legislature has thus recognized the need of providing authority for cities and counties to establish airports.  While in Section 1-B authority is given a city to acquire land outside of the county in which it is situated, such authority is not extended to counties.  Section 1-A, to which a county must look for its powers in respect to this subject matter, in providing authority for counties to acquire and operate airports limits such powers to the acquisition of lands located within the boundaries of the county making the purchase.

Prior to the enactment of S. B. 398, cities had authority to acquire and operate airports under H. B. 160, 41st Leg., but such authority extended only to the acquisition of airports situated wholly within the county in which the city was located. The need for authority for cities to acquire airport land outside the county was the basis of the emergency clause of S. B. 398. The difference made between counties and cities quite evidently was a conscious one on the part of the Legislature.

While S. B. 433, Ch. 168, General and Special Laws, 47th Leg., probably is not applicable, as it is enacted to provide for the acquisition of lands "for the use of the Federal Government", it is noted that it also provides that the land so acquired by a county must lie within the limits of such county.

Finding no statute or constitutional provision expressly giving authority to a county to acquire land outside its boundaries for airport purposes, nor from which the power could be reasonably implied, we are compelled to answer your question in the negative.

Yours very truly

JAN 22 1942

ATTORNEY GENERAL OF TEXAS

By _Glenn R. Lewis_

Glenn R. Lewis
Assistant

GENERAL

C.L:BT